ACCEPTED
12-14-00123-CV
TWELFTH COURT OF APPEALS
TYLER, TEXAS
12/27/2014 9:39:47 AM
CATHY LUSK
CLERK

No. 12-14-00123-CV

In the

FILED IN
12th COURT OF APPEALS
TYLER, TEXAS
12/27/2014 9:39:47 AM
CATHY S. LUSK
Clerk

Twelfth Court of Appeals

Liberty Mutual Insurance Company,

*Appellant,*

v.

Rickie Sims,

*Appellee.*

## BRIEF OF APPELLEE RICKIE SIMS

Don Wheeler
State Bar No: 21256200
**LAW OFFICE OF DON WHEELER**
101 Tenaha Street
Center, Texas 75935
Telephone No.: (936) 598-2925
Facsimile No.: (936) 598-7024
**velawson@sbcglobal.net**

Darrin Walker
State Bar. No. 00788600
**LAW OFFICE OF DARRIN WALKER**
6134 Riverchase Glen Dr.
Kingwood, Texas 77345
Telephone No.: (281) 358-2295
Facsimile No.: (281) 358-5602
**darrinwalker@embarqmail.com**

## ORAL ARGUMENT REQUESTED

# TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ix

STATEMENT OF FACTS AND PROCEDURAL HISTORY. . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

I.      AS A MATTER OF LAW, THE UIM POLICY LIMIT IN THE POLICY
        WAS $1 MILLION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        A.      Sims offered conclusive evidence that the UIM policy
                limit was $1 million.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

        B.      Liberty Mutual offered no admissible evidence that the
                Policy was modified to reduce the UIM policy limit to
                $250,000... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

                1.      *Liberty Mutual offered no evidence that Liberty
                        Mutual and Chesapeake ever agreed to modify
                        the policy limit.*. . . . . . . . . . . . . . . . . . . . . . . . . . . 22

                2.      *Liberty Mutual offered no evidence that it gave
                        consideration for any reduction of the policy
                        limit.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

II.     THE TRIAL COURT PROPERLY INCLUDED THE FACTUAL DISPUTE
        OVER WHETHER THE POLICY LIMIT HAD BEEN REDUCED IN THE
        ISSUES TRIED TO THE JURY.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

III. EVIDENCE OF THE POLICY LIMIT WAS RELEVANT AND
ADMISSIBLE TO PROVE AN ELEMENT OF SIMS'S CLAIM... . . . . . . . . . . . . . . 33

IV. THE TRIAL COURT PROPERLY ADMITTED SIMS'S EVIDENCE
AND EXCLUDED LIBERTY MUTUAL'S.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

    A. Standard of Review.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

    B. The trial court properly admitted Plaintiff's Exhibit
    13 (the Policy).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

        *1. Whether the Policy was modified to reduce*
        *the policy limit was a fact issue to be resolved*
        *in this case.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

        *2. Sims's pleading supported the admission of*
        *the Policy.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

        *3. The trial court did not abuse its discretion in*
        *overruling Liberty Mutual's objection under*
        *Rule 403.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

    C. The trial court properly admitted Liberty Mutual's
    responses to Sims's Requests for Admission.. . . . . . . . . . . . . . . . 48

    D. The trial court properly excluded Defendant's
    Exhibit 12... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

    E. The trial court properly excluded Liberty Mutual's
    supplemental discovery responses... . . . . . . . . . . . . . . . . . . . . . . 53

        *1. The court properly excluded Liberty Mutual's*
        *purported "amendment" to its response to*
        *Sims's Request for Admission No. 6.*. . . . . . . . . . . . . . . . . . 53

        *2. The court properly excluded Liberty Mutual's*
        *supplemental discovery responses.*. . . . . . . . . . . . . . . . . . . 56

V.      THE ADMISSION OF EVIDENCE OF INSURANCE IN THIS CASE
DID NOT VIOLATE TEXAS RULE OF EVIDENCE 411 OR HARM
LIBERTY MUTUAL... . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59

CONCLUSION AND PRAYER.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

CERTIFICATE OF COMPLIANCE WITH TEXAS RULE OF
APPELLATE PROCEDURE 9.4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 63

# INDEX OF AUTHORITIES

*Cases:*

*Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21
(Tex. App.—Houston [14th Dist.] 2005, no pet.). . . . . . . . . . . . . . . . . . 22, 23

*Benchmark Ins. Co. v. Sullivan*, No. 12-07-00223-CV,
2009 WL 1153385 (Tex. App.—Tyler April 30, 2009,
no pet.) (mem. op.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Brandon v. Schroeder*, 167 S.W.2d 599 (Tex. Civ. App.—
Galveston 1942), *rev'd on other grounds*,
141 Tex. 319, 172 S.W.2d 488 (1943). . . . . . . . . . . . . . . . . . . . . . . . 26-27

*Cooke v. Dykstra*, 800 S.W.2d 556 (Tex. App.—Houston
[14th Dist.] 1990), *opinion modified on rehearing*,
1990 WL 310627 (Tex. App.—Houston [14th Dist.]
Nov. 29, 1990, no writ). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48-49

*First Nat'l Bank of Louisville v. Lustig*, 150 F.R.D. 548
(E.D. La. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50, 51

*Goss v. Kellogg Brown & Root Inc.*, 232 S.W.3d 816
(Tex. App.—Houston [14th Dist.] 2007, pet. denied). . . . . . . . . . . . . . 42-43

*Hammer v. State*, 296 S.W.3d 555 (Tex. Crim. App. 2009). . . . . . . . . . . . . . . . . 46

*Hathaway v. General Mills, Inc.*,
711 S.W.2d 227 (Tex. 1986). . . . . . . . . . . . 22, 28, 29, 31, 34, 36, 39, 44, 51

*Henson v. Southern Farm Bureau Cas. Ins. Co.*,
17 S.W.3d 652 (Tex. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*In re Reynolds*, 369 S.W.3d 638 (Tex. App.—Tyler 2012,
orig. proceeding). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 33, 40, 44, 47, 60

*Kaufhold v. McIver*, 682 S.W.2d 660 (Tex. App.—Houston [1ˢᵗ Dist.]1984, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . . . . . . 24, 40

*Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 461 N.W.2d 291 (Iowa 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 44

*Lively v. Blackwell*, 51 S.W.3d 637 (Tex. App.—Tyler 2001, pet. denied). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Lomax v. State*, 16 S.W.3d 448 (Tex. App.—Waco 2000, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 56

*Marshall v. Vise*, 767 S.W.2d 699 (Tex. 1989). . . . . . . . . . . . 21, 27, 51, 55, 58, 59

*Mid-Century Ins. Co. Of Texas v. McLain*, No. 11-08-00097-CV, 2010 WL 851407 (Tex. App.—Eastland March 11, 2010, no pet.) (mem. op.). . . . . . . . . . . . . . . . . . . . . . . 35, 37, 38-39, 44, 47, 60-61

*Morgan v. Anthony* 27 S.W.3d 928 (Tex. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . 58

*Moss v. State*, 75 S.W.3d 132 (Tex. App.—San Antonio 2002, pet. ref'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45-46

*Naik v. Naik*, 438 S.W.3d 166 (Tex. App.—Dallas 2014, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Natural Gas Pipeline Co. of Am. v. Pool*, 30 S.W.3d 618 (Tex. App.—Amarillo 2000), *rev'd on other grounds*, 124 S.W.3d 188 (Tex. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*Parkway Hosp., Inc. v. Lee*, 946 S.W.2d 580 (Tex. App.— Houston [14ᵗʰ Dist.] 1997, writ denied). . . . . . . . . . . . . . . . . . . . . 48

*Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759 (Tex. App.—Corpus Christi 1999, pet. denied). . . . . . . . . . . . . . . . . . . . . 46

*PPC Transp. v. Metcalf*, 254 S.W.3d 636 (Tex. App.—
Tyler 2008, no pet.).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42, 43, 47

*Red Ball Motor Freight, Inc. v. Dean*, 549 S.W.2d 41
(Tex. Civ. App.—Tyler 1977, writ dism'd w.o.j.). . . . . . . . . . . . . . . . 48

*Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492
(Tex. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Sanders v. State*, 255 S.W.3d 754 (Tex. App.—Fort Worth
2008, pet. ref'd).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*Stowers v. Harper*, 376 S.W.2d 34 (Tex. Civ. App.—Tyler
1964, writ ref'd n.r.e.).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23, 50

*Travelers Ins. Co. v. Creyke*, 446 S.W.2d 954 (Tex. Civ.
App.—Houston [14th Dist.] 1969, no writ).. . . . . . . . . . . . . . . . . . . 51-52

*United States v. Dennis*, 625 F.2d 782 (8th Cir. 1980). . . . . . . . . . . . . . . . . . 47

*United States v. Pace*, 10 F.3d 1106 (5th Cir. 1993). . . . . . . . . . . . . . . . . . . 46

*United States v. Terry*, 702 F.2d 299 (2nd Cir. 1983). . . . . . . . . . . . . . . . . 50, 51

*United States Football League v. National Football League*,
842 F.2d 1335 (2nd Cir. 1988).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

*Wal-Mart Stores, Inc. v. Cordova*, 856 S.W.2d 768
(Tex. App.—El Paso 1993, writ denied). . . . . . . . . . . . . . . . . . . . . . . 59

*Wal-Mart Stores, Inc. v. Deggs*, 968 S.W.2d 354 (Tex. 1998).. . . . . . . . . . . . . 49

*World Wide Ass'n of Specialty Programs v. Pure, Inc.*,
450 F.3d 1132 (10th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 46-47

*Zodiac Corp. v. General Elec. Credit Corp.*, 566 S.W.2d 341
(Tex. Civ. App.—Tyler 1978, no writ).. . . . . . . . . . . . . . . . . . . . . . 24, 50

**Court Rules:**

TEX. R. APP. P. 33.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 60

TEX. R. APP. P. 38.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

TEX. R. CIV. P. 193.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

TEX. R. CIV. P. 198.3. . . . . . . . . . . . . . . . 11, 20-21, 27, 31, 51, 54, 55, 58, 59

TEX. R. CIV. P. 270. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 39

TEX. R. EVID. 103. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48, 54, 60

TEX. R. EVID. 106. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49, 51, 55

TEX. R. EVID. 107. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49-50, 51

TEX. R. EVID. 403. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46, 61

TEX. R. EVID. 411. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 59, 60, 61

TEX. R. EVID. 801. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 58, 59

TEX. R. EVID. 802. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 58, 59

**Secondary Authorities:**

J. WEINSTEIN AND M. BERGER, WEINSTEIN'S EVIDENCE
    (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

36 TEX. JUR. 3D *Evidence* § 360 (Westlaw 2014). . . . . . . . . . . . . . . . . . . . . . 24

36 TEX. JUR. 3D *Evidence* § 362 (Westlaw 2014). . . . . . . . . . . . . . . . . . . . 24, 51

**STATEMENT OF THE CASE**

| | |
|---|---|
| Nature of the Case: | Sims sued Liberty Mutual to recover underinsured motorist benefits under an automobile insurance policy Liberty Mutual issued to Sims's employer, Chesapeake Energy Corporation. |
| Course of Proceedings: | Sims sued the underinsured motorist (Aryka Knous) for negligence and sued Liberty Mutual and Farmers Casualty Insurance Company (his personal auto liability insurer) to collect UIM benefits.  [1 CR 11-16]  Sims settled with Knous before trial, and proceeded to trial against Liberty Mutual and Farmers.  [2 RR 24-25]  Although Liberty Mutual judicially admitted that its policy limit was $1 million [6 CR 950] and never requested leave to withdraw that admission, at trial it took the position that the policy had been modified to reduce the policy limit to $250,000.  [2 RR 23-24; 3 RR 7]  The trial court submitted that factual dispute to the jury.  The jury found that Knous's negligence proximately caused Sims to suffer over $2.5 million in damages, and that the policy limit was $1 million.  [6 CR 1005-1009] |
| Trial Court's Disposition: | The trial court entered judgment against Liberty Mutual for $1 million.  [10 CR 1680-1683] |

# ISSUES PRESENTED

1. Liberty Mutual judicially admitted that its policy limit was $1 million, yet also claimed the policy had been modified to reduce the policy limit to $250,000. Sims bore the burden of proving how much UIM coverage he had, and Liberty Mutual bore the burden of proving that the policy had been modified. So the trial court properly admitted evidence of the policy limit and submitted the issue to the jury. Because Sims conclusively established that the policy limit was $1 million, and Liberty Mutual offered no admissible evidence that the policy had been modified to reduce the policy limit, the court properly entered judgment for $1 million in conformity with the jury's verdict.

2. Whether the policy had been modified to reduce the policy limit was a fact issue that had to be resolved for the court to enter a judgment on Sims's UIM claim. Accordingly, the trial court properly admitted evidence of the policy limit, submitted the issue to the jury, and entered judgment for $1 million in conformity with the jury's verdict.

3. Sims offered admissible (indeed conclusive) evidence that the policy limit was $1 million. Liberty Mutual failed to offer any admissible evidence that the policy had been modified to reduce the policy limit, and also failed to seek leave to withdraw its judicial admission that the policy limit was $1 million. So the trial court properly excluded Liberty Mutual's inadmissible "evidence," which would have contradicted its judicial admission.

4. Rule 411 prohibits the admission of evidence that a party is insured against liability for the purpose of proving that the party acted wrongfully, but not for any other purpose. There was no issue in this case regarding whether Chesapeake acted wrongfully, and the evidence of Chesapeake's insurance policy was offered to prove an element of Sims's contract claim under the policy, not to prove that Chesapeake acted wrongfully. So, the admission of the policy didn't violate Rule 411.

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

On March 25, 2012, Ricky Sims was injured in a motor vehicle accident in Oklahoma. [3 RR 61-62, 67; 6 CR 949-950] At the time of the accident, Sims was operating a vehicle owned by his employer, Nomac/Chesapeake Energy Corporation (hereinafter "Chesapeake") with Chesapeake's permission in the course and scope of his employment. [3 RR 66-70, 75; 6 CR 950; DX-2] The driver of the vehicle that struck Sims, Aryka Knous, did not have enough insurance to compensate Sims for the severe injuries he suffered. [2 RR 24-25; PX 4a, 4b, 7a, 7b (5 RR, Part II, pp. 582-585, 627, 631-632)] So on January 30, 2013, Sims sued Liberty Mutual to collect underinsured motorist benefits under an automobile liability insurance policy ("the Policy") issued by Liberty Mutual to Chesapeake. [PX-13; 3 RR 61-62; 1 CR 11-16; 6 CR 935]

On May 17, 2013, in response to Sims's Request for Disclosure, Liberty Mutual produced a copy of the Policy's Declarations Page that stated that the UIM policy limits were $1 million. [6 CR 890-893, 896-900]

On September 11, 2013, in response to Request for Production No. 1 in Sims's Second Set of Requests for Production (which requested that Liberty Mutual produce "[a] true and correct copy of the declaration sheet(s) and policy(s) of uninsured and/or underinsured motorist insurance made the basis of this suit"),

1

Liberty Mutual stated, "Defendant refers Plaintiff to the insurance policy DEFN 00002-00237 produced via email to Peggy Watlington on August 13, 2013." [8 CR 1415-1418] That policy stated that the UIM policy limit was $1 million. [PX-13, Bates No. DEFN 00010;[1] 8 CR 1430]

Also on September 11, 2013, in response to Sims's Request for Admission No. 6 (which requested that Liberty Mutual "admit or deny that said insurance policy issued by LIBERTY MUTUAL INSURANCE COMPANY to CHESEAPEAKE ENERGY covering RICKIE SIMS and the 2009 Chevrolet 1500 truck on the day of the accident of March 25, 2012 contained uninsured/ underinsured motorist coverage of one million dollars per accident"), Liberty Mutual stated, "Based upon the information known to date, Defendant admits the Uninsured/Underinsured Policy Limits in the Commercial Automobile Policy issued to Chesapeake Energy Corporation had limits of $1M." [6 CR 950]

On October 15, 2013, Liberty Mutual served upon Sims its "First Supplemental Responses to Plaintiff's Discovery Requests." In this document, Liberty Mutual "supplemented" its response to Sims's Interrogatory No. 10,

---

[1]      The copy of Plaintiff's Exhibit 13 that is contained in 5 RR, Part II is out of order and incomplete, but all the significant pages are there. The pages of PX-13 in the Reporter's Record are in the following order: DEFN 00002, DEFN 00065, DEFN 00110-178, DEFN 66-109, DEFN 00003-00064. A complete copy of PX-13 is located at 8 CR 1422 — 10 CR 1679.

stating in relevant part, "Defendant retains UM/UIM coverage limits of $250,000. Defendant refers Plaintiff to the Policy attached hereto as DEFN 00239-00252. . . . Any previous information given to this Interrogatory is no longer applicable." [6 CR 901-905]  In supplemental responses to Interrogatory No. 11 and Request for Production No. 9, which sought information about and production of additional UIM coverage that might cover Sims's accident, Liberty Mutual referred Sims "to DEFN 00002-00237, the Liberty Mutual Commercial Auto policy previously provided to Plaintiff," and "the Policy attached hereto as DEFN 00238-00252, regarding amendments to the policy regarding UM/UIM policy limits." [6 CR 904-905]  DEFN 00238-00252 consisted of 14 pages, two of which purported to reflect an endorsement to reduce the policy limit of Chesapeake's Texas UIM coverage to $250,000.  [6 CR 907-908]  However, Liberty Mutual did not supplement its response to Sims's Request for Production No. 1 in Sims's Second Set of Requests for Production, which had identified the Policy originally produced (which showed a UIM policy limit of $1 million) as the Policy.  [6 CR 901-905]

Sims was suspicious of this complete reversal of Liberty Mutual's position regarding its policy limit for several reasons:

3

1. Liberty Mutual had judicially admitted that the policy limit was $1 million and had produced the documents verifying that policy limit. [8 CR 1415-1418, 1430] How could the insurance company (and its insured, with whom it could easily communicate) not know its own policy limit?

2. The so-called "endorsements" produced on October 15, 2013, contained no signature indicating that Chesapeake had ever agreed to the alleged reduction of its Texas UIM coverage. [6 CR 906-919]

3. The so-called endorsements *did* include a signed selection of New Mexico UIM policy limits, dated July 29, 2011. [6 CR 913-914] But the Policy that Liberty Mutual had originally produced stated that it was issued on August 8, 2011, and that the Texas UIM policy limit in that Policy was $1 million. [8 CR 4123, 1430] How could an endorsement predate the issuance of the policy it allegedly amended?

4. Both the Policy Liberty Mutual had originally produced and the "endorsements" it subsequently produced had a series of sequential page numbers in the top right corner of each page. The original Policy included pages 228201100160400002 — 228201100160400240. [8 CR 1422 — 10 CR 1679] The alleged "endorsements" included pages 339201100022200002 — 339201100022200015. [6 CR 906-919] It thus appeared that these two documents were not stored anywhere close to one another in Liberty Mutual's files. Why would the Policy and the endorsements that allegedly amended it not be stored together?

5. The Policy stated that Liberty Mutual could not reduce the insurance provided by the Policy unless Liberty Mutual afforded Chesapeake 90 days' written notice of the reduction [9 CR 1494], and no such notice had ever been produced.

4

6. Although Liberty Mutual "supplemented" its interrogatory response and responses to some of Sims's requests for production, it did not move for leave to withdraw its admission that the policy limit was $1 million. [6 CR 901-905]

In light of these suspicious circumstances, Sims refused to simply take Liberty Mutual's word for it that the policy limit had been reduced to $250,000, and prepared to prove the $1 million policy limit at trial. [3 RR 9-11]

On January 8, 2014, Sims filed a motion for leave to file his Third Amended Petition, which added an extra-contractual cause of action against Liberty Mutual under the Texas Insurance Code. [5 CR 820-21] This claim alleged that Liberty Mutual had misrepresented that the policy limit was $250,000, when in fact it was $1 million. [5 CR 829] Sims asked the court to permit the amendment, and then immediately sever the Insurance Code cause of action into a separate lawsuit and abate the severed case until after the impending trial of his cause of action to recover UIM benefits. Sims requested this relief so that his Insurance Code cause of action (i) would be preserved and not subject to a plea of *res judicata* based on the final judgment in the UIM case, but (ii) would not delay the impending trial. [5 CR 820-821, 830] The court granted Sims's motion, permitted the filing of Sims's Third Amended Petition, and severed the Insurance Code cause of action

into a new cause number. [5 CR 855] Liberty Mutual removed the severed Insurance Code case to federal court on January 16, 2014. [6 CR 962]

On January 9, 2014, Liberty Mutual served upon Sims "Defendant's First Amended Responses and Objections to Plaintiff's Requests for Admissions." In this document, Liberty Mutual unilaterally and without seeking the court's leave purported to "amend" its response to Sims's Request for Admission No. 6. Whereas Liberty Mutual's September 11, 2013 response had admitted that the policy limit was $1 million, its January 9, 2014 "amendment" stated, "Denied. Based upon information and Policy Amendments previously provided to Plaintiff, the policy limits related to the above-referenced insurance policy total $250,000." [4 RR 135-136] Liberty Mutual never asked the court to permit it to withdraw or amend its original admission that the policy limit was $1 million.

At the pretrial hearing immediately prior to jury selection, Liberty Mutual offered "for the Court's record" a notebook containing certain discovery responses, correspondence, and a document Liberty mutual contended was the Policy and endorsements to the Policy. Liberty Mutual explicitly stated, "These will not be admitted into evidence." [2 RR 23] Given that the notebook was not offered as evidence, but merely "for the Court's record," Sims did not object to the notebook being made part of "the Court's record." [2 RR 23-24] The court

6

received the notebook as "Court Exhibit 1" (cited herein as "CX-1") for the limited purpose for which it was tendered. [2 RR 24]

Thereafter, Liberty Mutual "object[ed] to the trial going forward" because "[i]t's Liberty's position that it has $250,000 UM coverage, that the total amount of coverage that it has, has been tendered and, therefore, proceeding with this trial and incurring the legal expenses and fees associated with this trial should not proceed." [2 RR 26] Sims responded that "it's been the Plaintiff's position that there's a million dollars in insurance coverage, and that's still our position at this trial." [2 RR 26-27] The trial court did not rule on Liberty Mutual's objection.

After jury selection and prior to the commencement of the evidence, Liberty Mutual "renew[ed] [its] objection to the case proceeding forward" on the ground that it had tendered $250,000, which it claimed was its policy limit, and therefore "this is unnecessary cost being incurred by Liberty Mutual to try this case." [3 RR 7] Liberty Mutual continued:

> . . . [T]here's an issue as to the amount of policy limits. Liberty contends it's $250,000; Plaintiffs contend it's $1 million. That is not part of this lawsuit. They have filed a separate claim which the Court severed, which is now in federal court, dealing with all the extra contractual issues. It is in that lawsuit that the issue of policy limits will be decided. In this lawsuit, the only relevant issues are liability and damages. So we would certainly object to any mention whatsoever of policy limits. We think that would be a reversible error. . . . [P]olicy limits outside of the issue of control have been held

7

by Texas courts to be inadmissible as extremely prejudicial because Texas law shows that jurors are inherently more likely to rule, not only in favor of Plaintiff, but give higher verdicts. . . .

[3 RR 8-9]

Sims responded:

> . . . *[I]n re Reynolds* out of Tyler says that we have to prove the insurance policy was in effect. Had to prove how much insurance coverage there is. And the way we normally do that is by request for admission, and there's never a dispute as to the amount of coverage.
> But in this particular case it is, and that's our burden of proof. And we're ready to go forward to prove it's a million dollars, and we say it's a part of this case that we have to prove. This is a suit on an insurance contract, and that is an insurance contract that includes the contract itself, including all these terms, including the amount of insurance that's available.

[3 RR 9]

Liberty Mutual replied that the issue of the policy limit was to be litigated solely in the severed bad-faith case [3 RR 9], and counsel for Farmers Casualty Insurance Company (Sims's personal UIM carrier) argued:

> . . . it is inherently prejudicial to the insurance companies to have the amount of the limits admitted in front of the jury. I've had that excluded on many, many occasions in trying first party insurance cases because it influences the jury to award damages that exceed or approach or are in the neighborhood of the insurance policy limits when that is brought before them.

[3 RR 10]

Thereafter, the following exchange occurred:

8

SIMS'S COUNSEL: But, Judge, in all those cases, there was stipulation as to the amount of the policy limits. So if Liberty Mutual will stipulate that the insurance policy, in this case [is] a million dollars, th[en] we'll agree not to mention it.

LIBERTY MUTUAL'S COUNSEL: Liberty Mutual will stipulate that the policy limits were $250,000.

SIMS'S COUNSEL: So there's a dispute.

THE COURT: Well, there's an issue there.

LIBERTY MUTUAL'S COUNSEL: Right, but not for this Court, not for this jury to decide. It's for the Court, and that's actually a question of law. Because its interpretation of a contract, which is a question of law, which is again being decided by the federal court in a case which has been severed and removed from this Court, so that is an issue of law because it deals directly with interpretation of contracts. That is not an issue of fact for a jury to decide.

SIMS'S COUNSEL: Judge, first of all, this is a case against Liberty Mutual under the insurance contract. If there's a dispute as to what the policy limits are, how are you going to draft a judgment? Are you going to give a judgment based on what they say the policy limits are, or based on what we say the policy limits are? And this is not a question of interpreting [the] policy, this is a question of whether this alleged endorsement was ever adopted by the parties. That's a fact question.

[3 RR 10-11]

Liberty Mutual then argued that the only issues the jury should decide in the

UIM case were whether the underinsured motorist was at fault and the amount of

Sims's damages, because "the judgment should be whatever the jury comes up

9

with regardless of policy amounts." [3 RR 11]  Liberty Mutual theorized that, once the judgment in the full amount of Sims's damages was entered in this case, "then the policy will kick in, and then the question is how much does the policy pay?  What are the limits?  And that is a question that would be determined in the federal court in the severed cause of action." [3 RR 12]  Sims replied that there had to be a resolution of the factual dispute regarding the policy limit before the trial court could fashion a judgment in the UIM case, and the trial court overruled Liberty Mutual's objection. [3 RR 12-13]

At the opening of the evidence, Sims offered the Policy (DEFN 00002-00237) into evidence as Plaintiff's Exhibit 13. [3 RR 55; PX-13]  Liberty Mutual objected as follows:

> Your Honor, Plaintiff's Exhibit No. 13 is objected to by Defendant Liberty for the various reasons we've already mentioned.
> First and foremost, it's not in their pleadings as a dispute as to the policy amounts.  There's a separate lawsuit related to this, which has been filed in federal court severed from this case, and it's now in federal court.  This has nothing to do with the issues to be decided in this case.  It's [unduly] prejudicial, and we think it's reversible error if this is admitted.  Defendant Liberty moves for mistrial.

[3 RR 56]  The trial court admitted the Policy as Plaintiff's Exhibit 13. [3 RR 56-57]

Sims's counsel then read to the jury Liberty Mutual's September 11, 2013 responses to Sims's Requests for Admission Nos. 1-6 (including the response to Request for Admission No. 6 that admitted that the UIM policy limit was $1 million).  [3 RR 60-62]  Liberty Mutual did not object to this evidence, but requested under the rule of optional completeness to read its unauthorized "amendments" to its responses to the Requests for Admission, which had been served without leave of court on January 9, 2014.  [3 RR 58-59]  Sims opposed this request on the ground that responses to requests for admission are conclusive unless and until the admitting party seeks and obtains the court's leave to withdraw or amend them based on a showing of good cause, *see* TEX. R. CIV. P. 198.3, which Liberty Mutual had never done.  [3 RR 59]  Incredibly, ***even then, Liberty Mutual did not seek the court's leave to withdraw or amend its admissions.***  Thus, the trial court overruled Liberty Mutual's request to read its unauthorized "amended" responses to Sims's Requests for Admission.  [3 RR 60]

Sims called five witnesses in his case in chief:  (i) Sims [3 RR 63-124]; (ii) physical therapist Richard Bunch, Ph.D., who had performed a functional capacity evaluation of Sims, [3 RR 125-170]; (iii) Certified Life Care Planner and Registered Nurse Dan Bagwell, who prepared a life-care cost analysis regarding Sims, [4 RR 7-87]; (iv) neurologist and Certified Life Care Planner David Altman,

11

M.D., who examined Sims and jointly prepared the life-care cost analysis with Bagwell, [4 RR 87-110]; and (v) economist Dr. Charles Hawkins, who testified regarding the present value of Sims's future damages. [4 RR 111-131]

During Sims's case in chief, Liberty Mutual offered the so-called endorsements to the Policy (DEFN 000238-000252) into evidence as Defendant's Exhibit 12.[2] [4 RR 71-72] Sims objected that the exhibit was unauthenticated and that there was no admissible evidence that the so-called endorsement had ever been properly adopted by the parties. [4 RR 72-73] The court sustained the objection and excluded Liberty Mutual's Exhibit 12. [4 RR 75] Immediately after Sims rested, Liberty Mutual rested *without calling any witnesses*. [4 RR 141] *It thus offered no testimonial evidence that the so-called endorsement was ever effectuated*. Indeed, *no* evidence that would have supported a finding that the policy limit was $250,000 was admitted at trial.

The court's charge submitted four questions to the jury. In response to these four questions, the jury unanimously found that: (i) "the policy limit of the underinsured motorist coverage in the Liberty Mutual Policy at the time of the Collision" was $1 million; (ii) the negligence of Aryka Knous was the proximate cause of the Collision, (iii) no negligence on the part of Sims was a proximate

---

[2] DX-12 is located at 5 RR, Part II, pp. 873-886.

12

cause of the collision, and (iv) Sims sustained over $2.5 million in damages as a result of the Collision. [6 CR 1005-1011] The verdict was received without objection on January 23, 2013. [4 RR 192]

On February 7, 2013, Sims moved for a judgment awarding him $1 million in UIM benefits against Liberty Mutual. [6 CR 1019-1034] On February 13, 2013, Liberty Mutual filed "Defendant Liberty Mutual Insurance Company's Motion to Disregard Jury Answers and for Judgment Notwithstanding the Verdict and Objections to Plaintiff's Motion for Judgment on the Verdict" (hereinafter referred to as Liberty Mutual's "Motion to Disregard"). [7 CR 1048-1058] Attached as Exhibit A to Liberty Mutual's Motion to Disregard was an unsworn "Policy Certification Form" purportedly signed by Patricia Faunce, Manager of Central Processing Operations, Commercial Insurance Shared Services, and a copy of what Faunce's certification stated was "a true copy of the original policy [Number AS1-6910-522861-031] issued" to Chesapeake. [7 CR 1059—8 CR 1381] Notably, this document was *different* from the document Liberty Mutual had offered at trial as the true and correct copy of the policy. While the first 237 pages of the two documents were the same (and indeed, were the same as Plaintiff's Exhibit 13 [8 CR 1422 — 10 CR 1679][3]), after that they differed.

---

[3] *See* footnote 1, above.

[Compare CX-1 (located in 5 RR, Part I), Bates Nos. DEFN 00239-00252 *with* 8 CR 1307-1381]  The document attached as an exhibit to Liberty Mutual's Motion to Disregard contained many more pages than the one Liberty Mutual offered at trial.  [Compare CX-1 (containing 252 pages) with 7 CR 1060—8 CR 1381 (containing 311 pages).[4]

Sims filed a response in opposition to Liberty Mutual's Motion to Disregard, in which he noted that Liberty Mutual's responses to Plaintiff's Requests for Admission conclusively established that the policy limit was $1 million and that Liberty Mutual had offered no competent evidence at trial to prove that the alleged endorsement reducing the policy limit to $250,000 was ever effectuated.  [8 CR 1393]  Sims objected to Exhibits A and B[5] to Liberty Mutual's Motion to Disregard on the grounds that (i) the evidence was closed, (ii) any evidence contrary to Liberty Mutual's judicial admissions was inadmissible, and (iii) the document Liberty Mutual now alleged to be the policy was not

---

[4]     Notably, Liberty Mutual's Brief cites exclusively to the document first submitted ***after the verdict was rendered and received*** in support of Liberty Mutual's Motion to Disregard (which it refers to as "the certified Chesapeake Policy," *see Liberty Mutual's Brief, p. 4*), rather than the ***different*** document that it offered at trial (CX-1).

[5]     Exhibit B was simply excerpts from Exhibit A.  [8 CR 1382-1388]

authenticated by competent evidence, since Faunce's certification[6] was hearsay. [8 CR 1393]

On February 21, 2014, Judge Mitchell signed a Final Judgment awarding Sims $1 million in underinsured motorist benefits from Liberty Mutual. [10 CR 1680-1683] In its Final Judgment, the court stated:

> . . . The following facts were conclusively established through stipulations of the parties, Liberty Mutual's responses to Plaintiff's requests for admission that were on file with the District Clerk, and the evidence admitted at trial:
>
> .  .  .
>
> 4.     The policy limit on the underinsured motorist coverage in the Liberty Mutual Policy was $1,000,000.
>
> .  .  .
>
> The jury found that:
>
> 1.     The underinsured motorist policy limit in the Liberty Mutual Policy was $1 million.
>
> 2.     The negligence of Knous was a proximate cause of the collision, and no negligence of Sims was a proximate cause of the collision; and
>
> 3.     As a result of the collision, Plaintiff Rickie Sims suffered past damages in the amount of $605,885.47 and future damages in the amount of $1,935,000.

---

[6]     Sims erroneously referred to the unsworn certification as an "affidavit" in his response. [8 CR 1393]

.  .  .

Pursuant to the Liberty Mutual Policy, Liberty Mutual is liable to Plaintiff for the damages that Plaintiff is legally entitled to recover from Knous ($2,563,876.47, plus $83.00 per day after February 21, 2014 until the date this Judgment is signed) less the amount of Knous's automobile liability insurance policy limits ($100,000), up to the $1,000,000 policy limit of the underinsured motorist coverage in the Liberty Mutual Policy.

.  .  .

IT IS THEREFORE ORDERED AND ADJUDGED AS FOLLOWS:

That  Plaintiff Rickie Sims recover from Defendant Liberty Mutual Insurance Company the amount of $1,000,000 in underinsured motorist benefits. . . .

[10 CR 1680-1683]

16

## SUMMARY OF THE ARGUMENT

The claim that went to trial in this case was ***not*** a negligence claim against Aryka Knous (the negligent driver). It was a contract claim against Liberty Mutual to recover UIM benefits under the Policy. So Sims had the burden to introduce the Policy under which he was making his claim to prove his case in chief. And the trial court had to know what the UIM policy limit under the Policy was in order to craft a judgment (assuming Sims prevailed). But there was a factual dispute between the parties regarding what the policy limit was.

In its original discovery responses, Liberty Mutual produced what it contended was a true and correct copy of the Policy, which stated that the UIM policy limit was $1 million. Liberty Mutual also admitted in response to Sims's Requests for Admission that the UIM policy limit was $1 million. Later, Liberty Mutual "supplemented" its discovery responses, producing what it claimed was an amendatory endorsement that had reduced the UIM policy limit to $250,000. But it never:

(i) asked the trial court for leave to withdraw its judicial admission that the UIM policy limit was $1 million;

(ii) produced any admissible evidence that the alleged endorsement had ever been effectuated; or

17

(iii)    identified any witnesses to testify regarding the alleged modification of the Policy.

Further, there were other circumstances indicating that the Policy had never been modified to reduce the policy limit.

So, Sims prepared to prove the elements of his UIM claim, including that he was covered by $1 million of UIM coverage under the Policy. Liberty Mutual never moved for summary judgment or otherwise sought to establish as a matter of law that the Policy had been modified to reduce the policy limit to $250,000. And at trial, Liberty Mutual refused to concede that the policy limit was $1 million (despite its still-effective judicial admission that it was). To the contrary, Liberty Mutual claimed that the policy limit was $250,000 as a matter of law due to the alleged modification, and that the trial should not even proceed, since it had tendered $250,000 to Sims. For his part, Sims never stipulated or agreed that the policy limit was $250,000 or that the Policy had been modified to reduce the policy limit. So, there was a factual dispute between Sims and Liberty Mutual regarding whether the Policy had been modified to reduce the policy limit.

But at trial, Liberty Mutual offered no admissible evidence to prove the Policy had been modified to reduce the policy limit. And even if it had, such evidence would have been barred because Liberty Mutual had never sought or

18

obtained the trial court's permission to withdraw its judicial admission that the policy limit was $1 million.

By contrast, Sims introduced admissible, conclusive evidence (including the Policy and Liberty Mutual's judicial admission) that the policy limit was $1 million. The jury found that the policy limit was $1 million and that Sims's damages were approximately $2.5 million. When Sims moved for a $1 million judgment on the verdict, Liberty Mutual moved the court to disregard the jury's verdict and render judgment for $250,000, arguing that its policy limit was $250,000 as a matter of law. In support of this request, Liberty Mutual attached yet a third version of what it claimed was the actual policy, again without any admissible evidence to authenticate it or establish that the Policy had been modified to reduce the UIM policy limit from $1 million to $250,000. The trial court properly entered judgment against Liberty Mutual for $1 million, because the evidence properly admitted at trial conclusively established that the policy limit was $1 million, and Liberty Mutual failed to carry its burden of proving that the Policy had been modified to reduce the policy limit to $250,000.

I.    AS A MATTER OF LAW, THE UIM POLICY LIMIT IN THE POLICY WAS $1 MILLION.

Liberty Mutual's first issue — and indeed its entire appeal — is premised on the assumption that the Policy was modified to reduce the UIM policy limit from $1 million to $250,000.  But Liberty Mutual never offered any admissible evidence to prove that factual premise, and in fact judicially admitted that the policy limit was $1 million.

A.    **Sims offered conclusive evidence that the UIM policy limit was $1 million.**

Sims read to the jury Liberty Mutual's answer to Sims's Request for Admission No. 6, in which Liberty Mutual admitted that the UIM policy limit was $1 million.  [6 CR 950; 3 RR 62]  "A matter admitted under [Texas Rule of Civil Procedure 198] is conclusively established as to the party making the admission unless *the court permits* the party to withdraw or amend the admission," and "[t]he court may permit the party to withdraw or amend the admission [only] if: (a) the party shows good cause for the withdrawal or amendment; and (b) the court finds that the parties relying upon the responses and deemed admissions will not be unduly prejudiced and that the presentation of the merits of the action will be subserved by permitting the party to amend or withdraw the admission."  TEX. R.

CIV. P. 198.3 (emphasis added). Liberty Mutual neither sought nor obtained the court's leave to withdraw or amend its responses to any of Sims's Requests for Admission — ***even when Sims's counsel explicitly pointed out that it needed to do so.*** [3 RR 59] So its attempt to withdraw its admission that the policy limit was $1 million by unilaterally "amending" it [4 RR 135-136] was ineffectual. And "[a]n admission once admitted, deemed or otherwise, is a judicial admission, and a party may not then introduce testimony to controvert it." *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989). Accordingly, Liberty Mutual was not entitled to introduce evidence controverting its admission that the policy limit was $1 million, and its admission was conclusive and binding.

Furthermore, Plaintiff's Exhibit 13 was admitted without objection as to its genuineness or authenticity. [3 RR 56-57] That Exhibit unambiguously showed the UIM policy limit to be $1 million. [PX-13, Bates No. DEFN 00010 (5 RR, Part II, p. 802)] And as demonstrated below, Liberty Mutual failed to offer any competent evidence that the Policy was modified to reduce the UIM policy limit to $250,000. Accordingly, Sims conclusively established that the policy limit was $1 million. And even if Sims's evidence were not conclusive, it was certainly sufficient to support the jury's finding that the policy limit was $1 million. [6 CR 1005]

**B.** **Liberty Mutual offered no admissible evidence that the Policy was modified to reduce the UIM policy limit to $250,000.**

Whether a contract was modified depends on the parties' intentions and is a question of fact. *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986); *Naik v. Naik*, 438 S.W.3d 166, 173 (Tex. App.—Dallas 2014, no pet.); *Stowers v. Harper*, 376 S.W.2d 34, 39 (Tex. Civ. App.—Tyler 1964, writ ref'd n.r.e.). A modification must satisfy the elements of a contract: a meeting of the minds supported by consideration. *Hathaway*, 711 S.W.2d at 228; *Naik*, 438 S.W.3d at 173. The party asserting a modification to a contract has the burden of proof. *Hathaway*, 711 S.W.2d at 228; *Naik*, 438 S.W.3d at 173; *Stowers*, 376 S.W.2d at 39 (placing burden of proof on defendant asserting modification).

### 1. *Liberty Mutual offered no evidence that Liberty Mutual and Chesapeake ever agreed to modify the policy limit.*

A binding contract must have an offer and an acceptance, and the offer must be accepted in strict compliance with its terms. *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 26 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The parties must have a meeting of the minds, and each party must communicate its consent to the terms of the agreement. *Id*. The offer must be clear and definite just as there must be a clear and definite acceptance of all terms contained in the offer. *Id.* To form a binding contract, the party to whom the offer is made must

accept such offer and communicate such acceptance to the person making the offer. *Id.* Thus, to prove a valid acceptance of an offer to modify a contract, there must be evidence that the party asserting the modification called the other party's attention to the proposed modification and that the other party accepted the terms of the proposed modification. *Stowers*, 376 S.W.2d at 39.

Here, Liberty Mutual offered no such evidence. Prior to jury selection, Liberty Mutual tendered "for the Court's record" (but not to be admitted into evidence) 252 pages that its counsel asserted (without any evidence) were "the complete policy," including alleged endorsements to the Policy. [2 RR 23] During trial, Liberty Mutual offered as Defendant's Exhibit 12 fourteen pages that its counsel asserted (again without any evidence) were amendatory endorsements to the Policy (including one purporting to reduce Chesapeake's Texas UIM policy limit to $250,000 [DX-12, Bates No. DEFN 00241 (5 RR, Part II, p. 875)]. Upon Sims's objections, this exhibit was excluded. [4 RR 71-75] Finally, after the verdict was rendered and received, Liberty Mutual attached as Exhibit A to its Motion to Disregard (i) 311 pages that it claimed to be the complete Policy and all its endorsements and (ii) an unsworn "Policy Certification Form" stating, "I certify this is to be a true copy of the original policy issued." [7 CR 1060—8 CR 1388] Liberty Mutual never offered any testimony from any employee of Chesapeake or

23

Liberty Mutual to authenticate these documents or establish that the parties actually agreed to and properly effectuated the alleged endorsement reducing the Texas UIM policy limit to $250,000.

"Writings, standing alone, do not constitute evidence per se; they must ordinarily be accompanied by proof of some sort to show that they are genuine and executed by the party charged with their execution." 36 TEX. JUR. 3D *Evidence* § 360 (Westlaw 2014). Thus, "[a] private writing must be proved to be genuine before it can be admitted into evidence, especially when it is offered against a person not a party to the writing." *Kaufhold v. McIver*, 682 S.W.2d 660, 667 (Tex. App.—Houston [1st Dist.]1984, writ ref'd n.r.e.). *See also Zodiac Corp. v. General Elec. Credit Corp.*, 566 S.W.2d 341, 346 (Tex. Civ. App.—Tyler 1978, no writ) ("The requirement is that the document be authenticated as genuine before it can be used."). Further, "[a]s a general rule, to secure the admission of an instrument allegedly executed by an agent on behalf of his or her principal, the agent's authority to bind the principal must be shown." 36 TEX. JUR. 3D *Evidence* § 362 (Westlaw 2014).

Liberty Mutual offered no admissible evidence that Chesapeake ever agreed to the alleged endorsement reducing the Texas UIM policy limit to $250,000 (Bates No. DEFN 00241 in CX-1 and DX-12). Liberty Mutual called no employee

24

of Chesapeake (or even Liberty Mutual) to testify that Chesapeake agreed to the alleged modification. The 14 pages of alleged endorements contained signatures on only two pages. One of these purported to be the signature of "Stacy Roberts, Vice President — Risk Management," but that signature only related to New Mexico UIM coverage. [Bates No. DEFN00246-00247 in CX-1 and DX-12] Further, Liberty Mutual offered no evidence to prove that this signature was genuine, or that Stacy Roberts was authorized to agree to the modification of the terms of the New Mexico UIM coverage on behalf of Chesapeake. The alleged endorsements also contained a signature that purported to be that of "Patricia Faunce," which was on an MCS-90 endorsement issued to Performance Technologies, LLC. [Bates No. 00251 in CX-1 and DX-12] Of course, the MCS-90 has nothing to do with the limit of Texas UIM coverage. And the fact that this was an endorsement to a policy belonging to Performance Technologies, rather than Chesapeake, casts further suspicion on the genuineness of the alleged endorsements.

In its brief, Liberty Mutual relies almost exclusively on the 311-page document that it submitted for the first time after the verdict was rendered and received as an exhibit to its Motion to Disregard. But it was by then too late for Liberty Mutual to offer any such evidence. "When it clearly appears to be

25

necessary to the due administration of justice, the court may permit additional evidence to be offered at any time; ***provided that in a jury case no evidence on a controversial matter shall be received after the verdict of the jury***." TEX. R. CIV. P. 270. Because the matter of whether the Policy had been modified to reduce the UIM policy limit was disputed, the trial court could not have permitted Liberty Mutual to present additional evidence on that matter after the verdict, even if Liberty Mutual had asked it to. And Liberty Mutual never asked the court to permit the presentation of additional evidence, and the court didn't do so. Sims objected to the Exhibits to Liberty Mutual's Motion to Disregard on the ground that new evidence could not be admitted after Liberty Mutual rested and closed and the verdict was rendered and received. [8 CR 1393] The trial court impliedly sustained Sims's objection when it signed Sims's proposed judgment. [10 CR 1680-1683] So, Liberty Mutual cannot rely on the Exhibits to its Motion to Disregard to establish that the Policy was modified.

Furthermore, Rule 270 does not "alter the rules of evidence as to the character of evidence which is admissible; hearsay evidence would no more be admitted under this rule than it could be admitted if offered before the evidence had been closed." *Brandon v. Schroeder*, 167 S.W.2d 599, 602 (Tex. Civ. App.—Galveston 1942), *rev'd on other grounds*, 141 Tex. 319, 172 S.W.2d 488

(1943). Sims objected that the certification that purported to authenticate the 311-page document included in Exhibit A to Liberty Mutual's Motion to Disregard was inadmissible hearsay [8 CR 1393], which it was. TEX. R. EVID. 801(d), 802; *Benchmark Ins. Co. v. Sullivan*, No. 12-07-00223-CV, 2009 WL 1153385, at *3 (Tex. App.—Tyler April 30, 2009, no pet.) (mem. op.). The trial court impliedly sustained Sims's objection when it signed Sims's proposed judgment. [10 CR 1680-1683] So, even if the trial court had reopened the evidence (which it didn't and couldn't), there was no competent evidence to authenticate the genuineness of the documents attached to Liberty Mutual's Motion to Disregard.

Moreover, the trial court properly excluded Court Exhibit 1, Defendant's Exhibit 12 and the documents attached to Liberty Mutual's Motion to Disregard because Liberty Mutual had judicially admitted that the Policy's UIM policy limit was $1 million. [6 CR 950] Accordingly, that fact was conclusively established, and Liberty Mutual couldn't introduce any evidence to the contrary. TEX. R. CIV. P. 198.3; *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989). And Liberty Mutual's attempt to undo its admission by unilaterally "amending" it [4 RR 135-136] was ineffectual, since Liberty Mutual neither asked for nor received the trial court's permission to withdraw its admissions. TEX. R. CIV. P. 198.3. Accordingly, Liberty Mutual was not entitled to introduce evidence controverting

27

its admission that the policy limit was $1 million.  Liberty Mutual therefore offered no admissible evidence that Chesapeake and Liberty Mutual ever agreed to modify the Texas UIM policy limit and failed to carry its burden of proving the alleged modification of the Policy.

Finally, even if the documents Liberty Mutual offered had been admissible (which they weren't), they still didn't raise a fact issue regarding whether the Policy had been modified to reduce the UIM policy limit.  The Policy stated:

> We will not cancel this policy ***or make changes that reduce the insurance afforded by this policy*** until written notice of cancellation or reduction has been mailed or delivered to [Chesapeake] at least:
>
> a) 10 days before the effective date of cancellation, if we cancel for non-payment of premium; or
>
> b) 90  days before the effective date of the cancellation or reduction if we cancel or reduce the insurance afforded by this policy for any other reason.

[PX-13 (Bates No. DEFN 00063) (5 RR, Part II, p. 855) (emphasis added)] Liberty Mutual offered no evidence that it had ever given Chesapeake written notice of any reduction in the UIM policy limit.  Consequently, it failed to prove that the Policy was modified to reduce the policy limit.  *Hathaway*, 711 S.W.2d at 228.

28

### 2. Liberty Mutual offered no evidence that it gave consideration for any reduction of the policy limit.

Consideration is a present exchange bargained for in return for a promise. *Roark v. Stallworth Oil and Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991). It consists of either a benefit to the promisor or a detriment to the promisee. *Id.* The detriment must induce the making of the promise, and the promise must induce the incurring of the detriment. *Id.*

Liberty Mutual claims that the Policy was modified retroactively to the inception of the Policy to reduce the UIM policy limit from $1 million to $250,000. But it offered no evidence that Chesapeake received any refund for overpayments of premiums for the period when the policy limit was $1 million, that the premium was decreased to reflect any modification after the Policy was allegedly modified, or that Liberty Mutual gave any other consideration to Chesapeake in exchange for the alleged reduction in the policy limit. Accordingly, Liberty Mutual failed to carry its burden of proving that the Policy was modified to reduce the policy limit. *Hathaway*, 711 S.W.2d at 228.

**II.** **THE TRIAL COURT PROPERLY INCLUDED THE FACTUAL DISPUTE OVER WHETHER THE POLICY LIMIT HAD BEEN REDUCED IN THE ISSUES TRIED TO THE JURY.**

Liberty Mutual's first issue argues that (i) the language of the Policy was unambiguous and Sims didn't plead that it was ambiguous, (ii) therefore its interpretation was a question of law for the trial court, and (iii) therefore, the trial court erred in admitting evidence regarding the policy limit and submitting the question inquiring into the policy limit to the jury.[7] But the factual dispute that the jury decided was not what the language of the contract meant, but rather whether the Policy was modified to reduce the UIM policy limit from $1 million to $250,000. In arguing that the interpretation of "the contract" was a question of law for the court, Liberty Mutual erroneously presumes that "the contract" that bound the parties was a contract that Liberty Mutual claimed — but didn't prove — existed: CX-1, DX-12 and Exhibit A to Liberty Mutual's Motion to Disregard. But the evidence at trial and the jury's verdict established that the actual "contract" that bound the parties was the one that Liberty Mutual judicially

---

[7]    In support of its argument, Liberty Mutual cites cases that address disputes where both parties agree about the existence and terms of the contract, and merely disagree about the interpretation of the contract's language. This case, by contrast, involves a dispute about whether the contract was ever modified, so there is disagreement about whether the parties are bound by the original contract (PX-13) or the purported modification of the contract (DX-12). The cases upon which Liberty Mutual relies are inapposite.

admitted and the evidence established to exist: PX-13, with a $1 million UIM policy limit.

Liberty Mutual insisted that PX-13 was not the actual Policy because the Policy had been modified by DX-12. So there was a dispute as to whether the alleged modification reducing the policy limit from $1 million to $250,000 was ever effectuated. *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986). It was Liberty Mutual's burden to prove that it was, *id.*, and Liberty Mutual had the opportunity to do so. It could have done so by (i) moving the trial court to withdraw its admissions, TEX. R. CIV. P. 198.3, and (ii) producing admissible evidence that the Policy had been modified. *Hathaway*, 711 S.W.2d at 228. But it didn't. So, Liberty Mutual is simply wrong when it says that "the contract" unambiguously provided only $250,000 in UIM coverage. To the contrary, "the contract" that was proven at trial to exist (PX-13) unambiguously provided that the policy limit was $1 million. [PX-13, Bates No. DEFN 00010 (5 RR, Part II, p. 802)] Liberty Mutual cannot now say that (i) the real contract consists of the documents attached to its Motion to Disregard, (ii) those documents unambiguously provide that the policy limit was $250,000, and therefore (iii) the trial court erred in submitting the issue of the policy limit to the jury.

31

Moreover, Sims is not attempting to "create coverage" by waiver or estoppel. This was a suit on a contract, and Sims established that the contract provided $1 million in coverage. Liberty Mutual failed to prove that the contract had been modified to reduce the policy limit. Thus, it was established that the policy limit was $1 million. The trial court's judgment did not create coverage that did not exist under the Policy by virtue of waiver or estoppel. Instead, it simply recognized that the evidence at trial demonstrated that the Policy was never modified to reduce the policy limit.

Liberty Mutual's argument that the trial court's judgment is an erroneous creation of coverage by waiver or estoppel is absurd, for it would mean that insurance companies were simply beyond the reach of the justice system. According to Liberty Mutual, it doesn't matter that Liberty Mutual wholly failed at trial to prove that the Policy was modified to reduce the policy limit. As long as Liberty Mutual *claims* the Policy was modified — even without offering any competent evidence — any judgment based on the original policy limit would be imposing liability on the basis that Liberty Mutual "waived" or is "estopped" by its failure of proof to rely on the modification. None of the cases Liberty Mutual cites support this notion.

## III. EVIDENCE OF THE POLICY LIMIT WAS RELEVANT AND ADMISSIBLE TO PROVE AN ELEMENT OF SIMS'S CLAIM.

In its second issue, Liberty Mutual claims that, even though it claimed that the policy limit was only $250,000 because the Policy had been modified, evidence of the policy limit was irrelevant to any issue to be determined by the jury. Liberty Mutual cites no authority that supports this proposition.

In *In re Reynolds*, 369 S.W.3d 638 (Tex. App.—Tyler 2012, orig. proceeding), this Court held that a negligence claim against an underinsured driver and a UIM claim did not involve the same facts and issues because, while both claims involved the issues of the underinsured driver's negligence and the plaintiff's damages, the UIM claim required the plaintiff to prove that he had UIM coverage. *Id*. at 652. Accordingly, the Court held that a trial court had no discretion to refuse to sever the UIM claim from the negligence claim, because "evidence of insurance is not admissible in the trial of [the plaintiff's] negligence claims against [the underinsured driver]," ***"[b]ut evidence of . . . [the plaintiff's] UIM coverage is required to establish [the plaintiff's] UIM clai[m]."*** *Id*. at 653 (emphasis added).

Of course, in most cases the UIM policy limit is stipulated, so there is no reason for the jury to hear evidence of the policy limit in the UIM case. Sims's

33

counsel openly recognized this, and agreed not to offer any evidence of the policy limit if Liberty Mutual would stipulate that the policy limit was $1 million, as it had judicially admitted. But Liberty Mutual obstinately refused to do so, instead insisting that the policy limit was $250,000, despite its judicial admission to the contrary and its failure to offer any admissible evidence to support its contention. The trial court therefore reached the only conclusion that it could: that there was a dispute as to the policy limit. [3 RR 10] And indeed, ***Liberty Mutual admitted that such a factual dispute existed***. [3 RR 8]

Further, that dispute was ***not*** a dispute about interpreting the language of the Policy. Rather, it was a dispute about whether the Policy had been ***modified*** to reduce the policy limit from $1 million to $250,000. That was a question of fact for the jury. *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986). Although disputes regarding the policy limit are rare, when there is a dispute regarding the policy limit, the jury must hear evidence about the policy limit and resolve the factual dispute. *Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 461 N.W.2d 291, 294-95 (Iowa 1990). Otherwise, how could the court craft a judgment?

Liberty Mutual's position regarding how, when and by whom this factual dispute should be determined has been inconsistent, but none of its suggested

34

answers to these questions make any sense. Initially, Liberty Mutual posited that the issue of the policy limit could only be determined in the severed extra-contractual case. [3 RR 8] That argument is obviously incorrect, for in many (indeed most) UIM cases, the plaintiff never makes an extra-contractual claim. Yet in any UIM case in which the plaintiff prevails, the court must enter a judgment against the insurance company in a specific amount, which cannot exceed the UIM policy limit (since the insurer's liability is contractual, and therefore limited by the policy limit in the contract). *Henson v. Southern Farm Bureau Cas. Ins. Co.*, 17 S.W.3d 652, 654 (Tex. 2000) ("And because the damages exceeded Contreras' liability policy limits, Henson became entitled to the uninsured/underinsured motorist policy benefits, ***up to the policy limits***." (emphasis added)); *Mid-Century Ins. Co. Of Texas v. McLain*, No. 11-08-00097-CV, 2010 WL 851407, at *1, *3 (Tex. App.—Eastland March 11, 2010, no pet.) (mem. op.) ("McLain's claim in this case, made pursuant to her insurance policy, was contractual in nature." . . . "The judgment against Mid-Century should not have exceeded $20,000 [the UIM policy limit]."). How can the trial court fashion a proper judgment against the insurer in the UIM case when there is an unresolved factual dispute about the policy limit?

Liberty Mutual then contended that the issue of the policy limit was one of contract interpretation that was a question of law for the court, rather than a question of fact for the jury. [3 RR 10-11] But as noted above, in this case the dispute was not over what the language of the Policy meant, but whether the alleged modification to reduce the policy limit was ever effectuated. As Sims explained this to the trial court [3 RR 11], that was a question of fact for the jury. *Hathaway*, 711 S.W.2d at 228.

Liberty Mutual's third argument regarding when and by whom the matter of the policy limit must be determined was perhaps its most absurd. Liberty Mutual claimed that, despite the factual dispute about the policy limit, the only issues the jury should decide in the UIM case were whether the underinsured driver was at fault and the amount of Sims's damages, because "the judgment should be whatever the jury comes up with regardless of policy amounts." [3 RR 11] But of course, if that were the case, the trial court's judgment in this case would have ordered Liberty Mutual to pay Sims $2,540,885.40. [6 CR 1008-1109] Yet Liberty Mutual argued that the court should only award $250,000, because that is what Liberty Mutual claimed (without any evidence) was the policy limit. [7 CR 1050] And it is fundamental that the judgment in a UIM case is limited to the

36

policy limit, even if the damages the jury awards exceed the policy limit.  *Mid-Century Ins. Co.*, 2010 WL 851407 at *3.

Finally, Liberty Mutual theorized that, once the judgment in the full amount of Sims's damages were entered in this case, "then the policy will kick in, and then the question is how much does the policy pay?  What are the limits?  And that is a question that would be determined in the federal court in the severed cause of action."  [3 RR 12]  This is wrong for two reasons, both of which have been addressed above.  First, the question of what the policy limit is must be resolved before the judgment is entered in the UIM case, because the judgment against the insurer in the UIM case cannot exceed the policy limit.  Second, in most UIM cases there is never any extra-contractual claim asserted, so it is obvious that factual disputes about UIM policy limits cannot be reserved exclusively for extra-contractual cases.

The correct answer to the question is the one Sims provided:  When there is a factual dispute regarding whether the UIM policy was modified to change the policy limit, the jury must resolve that factual issue in the UIM case so that the trial court can fashion the judgment.  Indeed, in one of the very cases Liberty Mutual cites in its brief, the Eastland Court of Appeals held that it was the plaintiff's burden to introduce her insurance policy to establish the policy limit,

and that she should do so upon remand.  *Mid-Century Ins. Co.*, 2010 WL 851407

at *1-*3.  In that case, the plaintiff had failed to introduce her UIM policy at trial.

After the trial, the insurance company introduced it in order to establish the policy

limit so the court could craft a judgment.  The plaintiff argued that the court

should enter judgment for the entire amount of damages the jury found she had

suffered (over $116,000) because it was the insurance company's burden to

establish the policy limit.  The court of appeals rejected this argument, saying:

> ***Despite the fact that it was her burden of proof***, McLain contended
> that Mid-Century had not introduced McLain's policy during the jury
> trial . . ..  McLain's counsel erroneously argued to the trial court, and
> now to this court, that it was Mid-Century's burden to introduce
> McLain's policy . . . into evidence.  The long established Texas law is
> that a plaintiff seeking recovery against an insurance company for
> injuries resulting from the negligence of an uninsured motorist must
> plead and prove that, at the time of the accident, the plaintiff was
> protected by uninsured motorist coverage.  In the retrial of this case,
> ***McLain should introduce a copy of her policy and establish her
> UIM coverage if she continues to contend that the policy introduced
> by Mid-Century was not her policy at the time***.

*Id*. at *1-*2 (emphasis added).[8]

---

[8]      In *Mid-Century*, the trial court permitted the insurer to introduce the policy
after the verdict.  *Id*. at *1.  However, the plaintiff could not complain about that
procedural irregularity, because it benefitted the plaintiff.  In the absence of
evidence of the UIM policy, the plaintiff couldn't have recovered at all.  Further,
the plaintiff had judicially admitted prior to trial that the UIM policy limit was
$20,000.  So, there was no harm to the plaintiff in the insurer introducing the
policy post-verdict.  *Id*. at *3 ("Despite McLain's failure to introduce the policy,
Mid-Century did introduce a copy of the policy with its provision for $20,000 in

In this case, there was a dispute as to whether the Policy had been modified to reduce the policy limit. So Sims satisfied his burden of proof by introducing the Policy, as he was required to do. At that point, it was Liberty Mutual's burden to establish that the Policy had been modified. *Hathaway*, 711 S.W.2d at 228. Liberty Mutual simply failed to carry its burden of proof, and the jury found that the policy limit was $1 million. [6 CR 1005]

If, as Liberty Mutual claims in this appeal, it will unduly prejudice the insurer for the jury to hear evidence of the policy limit, there are a plethora of procedural options available to ameliorate any such prejudice. One is for the insurer to file a motion for summary judgment, if it believes it can establish as a matter of law that the policy was modified to reduce the policy limit. Liberty Mutual didn't do that here. Another option is to move to bifurcate the trial, so that the first phase involves only the questions of the underinsured driver's fault and the plaintiff's damages, and the second phase litigates the question of whether the policy was modified to reduce the policy limit. That way, evidence of the policy

_____

UIM benefits. At the outset of trial, counsel for McLain told the court that . . . the UIM limit in her policy was $20,000."). In the case at bar, by contrast, Sims always contended that the UIM policy limit was $1 million, and introduced conclusive evidence to support that contention at trial. Liberty Mutual then had the burden to introduce evidence ***at trial*** of the alleged modification. TEX. R. CIV. P. 270; *Hathaway*, 711 S.W.2d at 228.

39

limit could be excluded from the first phase, but the jury would still resolve the factual dispute about the policy limit in the second phase.[9] Liberty Mutual did not move to bifurcate the trial in this case. A third option (albeit probably less potent than the first two) would be to ask the court to instruct the jury that it should not consider the policy limit when determining the questions of fault and damages. Liberty Mutual requested no such instruction here.

Liberty Mutual can't blame the trial court for the result in this case. Liberty Mutual has only itself to blame. It judicially admitted that the policy limit was $1 million, and failed to move the court for leave to withdraw that admission when it decided it wanted to take a different position. It produced three different versions of "the contract," each time asserting that the document produced was the compete

_____

[9]    Indeed, Liberty Mutual argues on appeal that the issue of the policy limit was not relevant (and therefore should have been excluded) until after the jury found the underinsured motorist at fault and determined Sims's damages. *See Liberty Mutual's Brief, pp. 23-24.* While the trial court could have **bifurcated** the trial so that the policy limit issue was not litigated until after the other issues, the policy limit was a disputed factual issue that was integral to Sims's UIM claim, because Sims was suing **under the contract**. So the trial court could not have **severed** the issues into two different cause numbers, since they were all components of a single contractual cause of action against Liberty Mutual. *In re Reynolds*, 369 S.W.3d 638, 650 (Tex. App.–Tyler 2012, orig. proceeding) ("A claim is properly severable only if (1) the controversy involves more than one cause of action . . .."). Thus, Liberty Mutual's argument that the policy limit was not relevant to Sims's contractual cause of action against Liberty Mutual until after the jury determined that the underinsured driver was at fault and assessed Sims's damages is incorrect.

and correct Policy. It failed to identify or call any witnesses from either Chesapeake or Liberty Mutual to authenticate the alleged endorsement, to testify that the Policy had been modified to reduce the policy limit, or to explain the circumstances surrounding the alleged modification. Liberty called no witnesses — and indeed, presented no admissible evidence of any kind — to establish that it presented the alleged endorsement to Chesapeake or that Chesapeake ever agreed to the alleged modification of the Policy. Nor did Liberty Mutual even *attempt* to introduce any evidence that it gave any consideration for the alleged modification or that it provided Chesapeake the required written notice of any intent to reduce the policy limit. Liberty Mutual didn't move for summary judgment, move to bifurcate the trial, or even ask for a limiting instruction. Put simply, Liberty Mutual failed to properly litigate the case and carry its burden of proof on the factual dispute regarding whether the Policy was modified to reduce the policy limit. The trial court did not commit any error in the trial of this case.

## IV. THE TRIAL COURT PROPERLY ADMITTED SIMS'S EVIDENCE AND EXCLUDED LIBERTY MUTUAL'S.

In its third issue, Liberty Mutual complains about the trial court's (i) admission of Plaintiff's Exhibit 13 and Liberty Mutual's answers to Sims's Requests for Admission and (ii) exclusion of Defendant's Exhibit 12 and Liberty

41

Mutual's supplemental responses to Sims's written discovery. The trial court ruled correctly on every occasion.

## A. Standard of Review.

The trial court has broad discretion in admitting and excluding evidence and will be reversed only when it acted unreasonably or arbitrarily, without regard for any guiding rules or principles. *Lively v. Blackwell*, 51 S.W.3d 637, 641 (Tex. App.—Tyler 2001, pet. denied). Thus, appellate courts do not disturb trial courts' rulings on relevancy as long as they are within the zone of reasonable disagreement, and generally leave to the trial court's discretion questions of relevancy and the weighing of the probity of evidence versus its prejudicial nature. *PPC Transp. v. Metcalf*, 254 S.W.3d 636, 641 (Tex. App.—Tyler 2008, no pet.); *Natural Gas Pipeline Co. of Am. v. Pool*, 30 S.W.3d 618, 632 (Tex. App.—Amarillo 2000), *rev'd on other grounds*, 124 S.W.3d 188 (Tex. 2003). Further, an appellate court must uphold the trial court's evidentiary ruling if there is **any** legitimate basis for the ruling, even one not urged below. *Lively*, 51 S.W.3d at 641.

Error is not reversible unless it probably caused the rendition of an improper judgment. An evidentiary error satisfies this standard only where the appellant shows the whole judgment turned on the complained-of evidence. *Goss v. Kellogg*

*Brown & Root Inc.*, 232 S.W.3d 816, 819 (Tex. App.—Houston [14ᵗʰ Dist.] 2007, pet. denied). In determining whether error was harmful, this Court reviews the entire record. *PPC Transp.*, 254 S.W.3d at 643.

### B. The trial court properly admitted Plaintiff's Exhibit 13 (the Policy).

The trial court properly admitted Plaintiff's Exhibit 13 (the Policy). When Sims offered Plaintiff's Exhibit 13, Liberty Mutual made the following objection:

> Your Honor, Plaintiff's Exhibit No. 13 is objected to by Defendant Liberty for the various reasons we've already mentioned. First and foremost, it's not in their pleadings as a dispute as to the policy amounts. There's a separate lawsuit related to this, which has been filed in federal court severed from this case, and it's now in federal court. This has nothing to do with the issues to be decided in this case. It's [unduly] prejudicial, and we think it's reversible error if this is admitted.

[3 RR 56]

#### 1. Whether the Policy was modified to reduce the policy limit was a fact issue to be resolved in this case.

We have addressed above why the "reasons [Liberty Mutual had] already mentioned" — which included that "[t]here's a separate lawsuit related to this, which has been filed in federal court severed from this case, and it's now in federal court" and "[t]his has nothing to do with the issues to be decided in this

case" — were meritless. Sims was required to introduce the Policy as part of his case in chief. *In re Reynolds*, 369 S.W.3d 638, 653 (Tex. App.—Tyler 2012, orig. proceeding); *Mid-Century Ins. Co. Of Texas v. McLain*, No. 11-08-00097-CV, 2010 WL 851407, at *1-*2 (Tex. App.—Eastland March 11, 2010, no pet.) (mem. op.). Further, because there was a factual dispute regarding whether the Policy had been modified to reduce the policy limit, Sims was entitled to introduce evidence of what the original policy limit was, *Mid-Century Ins. Co.*, 2010 WL 851407 at *2; *Leuchtenmacher v. Farm Bureau Mut. Ins. Co.*, 461 N.W.2d 291, 294-95 (Iowa 1990), and it was then Liberty Mutual's burden to prove that it had been modified to reduce the policy limit. *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986).

### 2. *Sims's pleading supported the admission of the Policy.*

Liberty Mutual's objection that the introduction of the Policy was not supported by the pleadings was meritless. Sims's Third Amended Petition alleged as follows:

8.

Pleading further, Plaintiff would show that at the time of the occurrence made the basis of this suit, Knous was an uninsured/ underinsured motorist; and as such, Defendant, LIBERTY MUTUAL INSURANCE COMPANY, and Defendant, FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, are liable and responsible to the Plaintiff for the damages sustained by the Plaintiff.

44

***Therefore, Defendants are liable to the Plaintiff for the policy limits under the policy of insurance issued by LIBERTY MUTUAL INSURANCE COMPANY to Chesapeake Energy Corporation*** and the policy limits under the policy of insurance issued by FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY to Plaintiff, both of which policies provided uninsured/underinsured motorist coverage. Said coverages were in effect at the time of the collision, and all conditions precedent to recovery under the policies of insurance issued by the Defendants have been complied with and demand has been made for payment of the same. Therefore, Plaintiff brings this suit ***and is entitled to recover*** under the uninsured/under insured motorists provision of the policies of insurance in question ***the policy limits***.

9.

Defendant Liberty Mutual Insurance Company has misrepresented the uninsured/underinsured policy limits of its insurance policy issued to Chesapeake Energy Corporation, representing that the policy limits are $250,000 per accident, ***when in fact the limits are $1 million per accident***. . . .

[6 CR 939-40 (emphasis added)] Thus, the pleadings clearly supported the

introduction of the Policy, including the policy limits. And indeed, Liberty

Mutual has waived any contention that the trial court erred in overruling this

particular objection by failing to brief it on appeal. TEX. R. APP. P. 38.1(i).

### 3. The trial court did not abuse its discretion in overruling Liberty Mutual's objection under Rule 403.

Finally, the trial court properly overruled Liberty Mutual's objection that

Plaintiff's Exhibit 13 was "unfairly prejudicial." All evidence is prejudicial to one

party or the other. *Moss v. State*, 75 S.W.3d 132, 141 (Tex. App.—San Antonio

2002, pet. ref'd). Accordingly, evidence may be excluded only if its probative value is ***substantially*** outweighed by the danger of ***unfair*** prejudice. TEX. R. EVID. 403. "Unfair prejudice" does not mean that the evidence injures the opponent's case, which is the central point of offering evidence. *Moss*, 75 S.W.3d at 141. Rather it refers to an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one. *Id*.

Further, it is only when the potential for unfair prejudice ***substantially*** outweighs the probative value of the evidence that it is to be excluded. TEX. R. EVID. 403; *Pittsburgh Corning Corp. v. Walters*, 1 S.W.3d 759, 772 (Tex. App.—Corpus Christi 1999, pet. denied). That is, it is only when there exists a ***clear disparity*** between the degree of prejudice of the offered evidence and its probative value that Rule 403 is applicable. *Moss*, 75 S.W.3d at 141. Thus, it is presumed that the probative value of relevant evidence exceeds any danger of unfair prejudice, *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009), and the exclusion of evidence under Rule 403 should occur only sparingly. *United States v. Pace*, 10 F.3d 1106, 1115 (5th Cir. 1993).

In performing the Rule 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value. *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132,

46

1139 (10th Cir. 2006). And "[i]n weighing the probative value of evidence against the dangers and considerations enumerated in Rule 403, the general rule is that the balance should be struck in favor of admission." *United States v. Dennis*, 625 F.2d 782, 797 (8th Cir. 1980). It is the objecting party's burden to demonstrate that the probative value is substantially outweighed by the danger of unfair prejudice. *Sanders v. State*, 255 S.W.3d 754, 760 (Tex. App.—Fort Worth 2008, pet. ref'd).

Sims was required to introduce the Policy as an element of his proof. *In re Reynolds*, 369 S.W.3d at 653; *Mid-Century Ins. Co.*, 2010 WL 851407 at *1-*2. Further, Liberty Mutual contended at trial that the policy limit was $250,000, because the Policy had been modified. So, the Policy's probative value was extremely high. And because Liberty Mutual refused to stipulate that the policy limit was $1 million, and prejudice it suffered as a result of Sims proving the $1 million policy limit was not ***unfair*** prejudice. Thus, the trial court's determination that the probative value of the Policy was not ***substantially*** outweighed by the danger of ***unfair*** prejudice was within the zone of reasonable disagreement, and the court did not abuse its discretion in admitting Plaintiff's Exhibit 13. *PPC Transp. v. Metcalf*, 254 S.W.3d 636 (Tex. App.—Tyler 2008, no pet.).

**C.    The trial court properly admitted Liberty Mutual's responses to Sims's Requests for Admission.**

When Sims offered Liberty Mutual's responses to Sims's Requests for Admission into evidence at trial, Liberty Mutual explicitly stated that it did not object to Sims's counsel reading its responses to the jury. Liberty Mutual merely requested under the Rule of Optional Completeness to read its unauthorized "amendments" to its responses to the Requests for Admission. [3 RR 58-59] We will address below why the court properly excluded Liberty Mutual's "amendments" to its responses to Sims's Requests for Admission. But Liberty Mutual's failure to object to Sims's reading its original responses waives any error in admitting them. TEX. R. EVID. 103(a); TEX. R. APP. P. 33.1(a).

Further, the court did not err in admitting Liberty Mutual's responses. Although responses to requests for admission properly on file with the clerk need not be introduced into evidence to be binding and conclusive, *Red Ball Motor Freight, Inc. v. Dean*, 549 S.W.2d 41, 43 (Tex. Civ. App.—Tyler 1977, writ dism'd w.o.j.), they are admissible against the admitting party. *Parkway Hosp., Inc. v. Lee*, 946 S.W.2d 580, 587-88 (Tex. App.—Houston [14th Dist.] 1997, writ denied), *disapproved of on other grounds by Roberts v. Williamson*, 111 S.W.3d 113 (Tex. 2003); *Cooke v. Dykstra*, 800 S.W.2d 556, 561-62 (Tex. App.—Houston

48

[14ᵗʰ Dist.] 1990), *opinion modified on rehearing*, 1990 WL 310627 (Tex. App.—Houston [14ᵗʰ Dist.] Nov. 29, 1990, no writ). *See also Wal-Mart Stores, Inc. v. Deggs*, 968 S.W.2d 354, 356 (Tex. 1998) ("At trial, Deggs's counsel read the deemed admissions to the jury and told the jury that these matters were conclusively established."). Further, Liberty Mutual's invocation of the Rule of Optional Completeness was not a ground for excluding Liberty Mutual's original responses, but at most raised the issue of whether the amended responses should have been admitted at that time. *Lomax v. State*, 16 S.W.3d 448, 450 (Tex. App.—Waco 2000, no pet.). Accordingly, the trial court did not abuse its discretion in admitting Liberty Mutual's responses into evidence.

### D. The trial court properly excluded Defendant's Exhibit 12.

Liberty Mutual claims the trial court erred in excluding Defendant's Exhibit 12, which Liberty Mutual claimed constituted endorsements that modified the Policy. Liberty Mutual's sole argument on appeal is that the court was required to admit Defendant's Exhibit 12 under the Rule of Optional Completeness. Texas Rule of Evidence 106 states, "When a writing or . . . part thereof is introduced by a party, an adverse party may at that time introduce any other part or any other writing . . . which ought in fairness to be considered contemporaneously with it." TEX. R. EVID. 106. Texas Rule of Evidence 107 states, "When part of . . . [a]

49

writing . . . is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other . . . writing . . . which is necessary to make it fully understood or to explain the same may also be given in evidence . . ..” TEX. R. EVID. 107.  However, the Rule of Optional Completeness "merely addresses the order of proof and does not make admissible evidence that should otherwise be excluded." *First Nat'l Bank of Louisville v. Lustig*, 150 F.R.D. 548, 554 (E.D. La. 1993) (citing 1 J. WEINSTEIN AND M. BERGER, WEINSTEIN'S EVIDENCE ¶ 106[01] (1986)).  That is, "Rule 106 does not render admissible evidence that is otherwise inadmissible." *United States v. Terry*, 702 F.2d 299, 314 (2nd Cir. 1983).  *See also United States Football League v. National Football League*, 842 F.2d 1335, 1375-76 (2nd Cir. 1988).

As explained in detail above, Defendant's Exhibit 12 was inadmissible for a number of reasons.  First, Liberty Mutual presented no admissible evidence that it was what it purported to be, *i.e.*, endorsements to the Policy.  *Kaufhold v. McIver*, 682 S.W.2d 660, 667 (Tex. App.—Houston [1st Dist.]1984, writ ref'd n.r.e.); *Zodiac Corp. v. General Elec. Credit Corp.*, 566 S.W.2d 341, 346 (Tex. Civ. App.—Tyler 1978, no writ).  Second, Liberty Mutual presented no evidence that:

    (i)    Chesapeake agreed to the alleged reduction in the policy limit, *Stowers v. Harper*, 376 S.W.2d 34, 39 (Tex. Civ. App.—Tyler 1964, writ ref'd n.r.e.);

(ii) the alleged endorsement was signed by an authorized agent of Chesapeake, 36 TEX. JUR. 3D *Evidence* § 362 (Westlaw 2014);

(iii) Liberty Mutual gave Chesapeake the required 90 days' written notice of its intent to reduce the policy limit [PX-13, Bates No. DEFN 00063 (5 RR Vol. II, p. 855)], or

(iv) Liberty Mutual gave any consideration for the alleged reduction in the policy limit. *Hathaway v. General Mills, Inc.*, 711 S.W.2d 227, 228 (Tex. 1986).

Further, Defendant's Exhibit 12 was inadmissible because it was contrary to Liberty Mutual's response to Sims's Request for Admission No. 6, in which Liberty Mutual admitted that the policy limit was $1 million. TEX. R. CIV. P. 198.3; *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989). Because Defendant's Exhibit 12 was inadmissible on all these independent bases, the Rule of Optional Completeness did not mandate that the trial court admit it, just because Plaintiff's Exhibit 13 was admitted. *United States v. Terry*, 702 F.2d at 314; *First Nat'l Bank of Louisville*, 150 F.R.D. at 554.

Indeed, the Rule of Optional Completeness only permits the introduction of other parts of ***the same document or transaction***. TEX. R. EVID. 106, 107. That is, the evidence sought to be introduced under the Rule of Optional Completeness "must bear some reasonable relationship to the [document previously admitted] and be in explanation thereof." *Travelers Ins. Co. v. Creyke*, 446 S.W.2d 954, 957

51

(Tex. Civ. App.—Houston [14th Dist.] 1969, no writ).  Because Liberty Mutual

offered no admissible evidence that Defendant's Exhibit 12 was actually a

properly effectuated modification of the Policy, it was not part of the same

document or transaction, and did not tend to explain anything in Plaintiff's Exhibit

13.  Therefore, it was properly excluded.

    **E.**    **The trial court properly excluded Liberty Mutual's supplemental discovery responses.**

Liberty Mutual's third issue complains that the court erred in excluding its

"amended discovery responses."  *Liberty Mutual's Brief, p. 26.*  The court did not

err.

        ***1.***    ***The court properly excluded Liberty Mutual's purported "amendment" to its response to Sims's Request for Admission No. 6.***

When Sims offered Liberty Mutual's responses to his Requests for

Admission into evidence, the following colloquy occurred:

> MR. KOEN:  Your Honor, the only thing we'd ask under the rule of optional completeness is that he reads the supplemental admissions as well that were filed.

> MR. WHEELER:  Your Honor, as far as — it's our position the Request for Admissions that have been filed, they're still in effect. They have never been taken away from being in effect, and so they're evidence in this particular case that we can read to the jury.

MR. KOEN:  Your Honor, we're not saying that they can't be read. But there were supplemental responses correcting what Mr. Wheeler is wanting to read to the jury, and I think it's misleading if he does not read the supplemental responses as well.

MR. WALKER:  Your Honor, the only way that an admission can be withdrawn is if the Court grants leave to withdraw it on good cause. And a Request for Admission is not like an interrogatory that you can just change your answer.  You have to have leave of court to change your answer; that's never been done.  Those supplemental responses are not proper.

MR. KOEN:  Your Honor, one other thing, too.  When we supplemented the discovery, we also supplemented in September — I think it was October, Your Honor, with the change to the policy, lowering the policy limits to $250,000.  That was previously released to Plaintiff's counsel as well.  I think it's misleading to [be] reading only portions of discovery when, in fact, there are several discovery responses which address this issue.

THE COURT:  Proceed.

MR. KOEN:  Can I get a ruling, Your Honor, on my objection to reading these without — well, I'm going to object without reading the supplemental discovery as well, just for record purposes.

THE COURT:  That's overruled.

[3 RR 59-60]

In its brief, Liberty Mutual asserts in connection with this colloquy that the court erred in "permitting Sims to read to the jury Liberty's original admission that applicable policy limits were $1 million without requiring the reading of the supplemental response that corrected it and showed policy limits were $250,000."

53

*Liberty Mutual's Brief, p. 30.* But Liberty Mutual did not provide the trial court with "Defendant's First Amended Responses and Objections to Plaintiff's Requests for Admissions" (the document in which it purported to "amend" its response to Request for Admission No. 6, which admitted that the policy limit was $1 million [4 RR 135-136]). [3 RR 59-60] Nor was that document included in "Court Exhibit 1," which had been tendered only for record purposes. [CX-1] Indeed, *that document is not even in the record in this appeal*. Liberty Mutual didn't even read the purported "amended" response to Request for Admission No. 6 to the court at that time (although Liberty Mutual's counsel later read its purported "amendment" to its response to Request for Admission No. 6 to the trial court [4 RR 135-136]). So, Liberty Mutual failed to make the substance of the evidence known to the court, and therefore failed to preserve error. TEX. R. EVID. 103(a)(2).

In any event, the court did not err in refusing to permit Liberty Mutual to read its purported "amendment" to its response to the jury. As noted above, "A matter admitted under [Texas Rule of Civil Procedure 198] is conclusively established as to the party making the admission unless *the court permits* the party to withdraw or amend the admission." TEX. R. CIV. P. 198.3 (emphasis added). Further, "[a]n admission once admitted, deemed or otherwise, is a judicial

54

admission, and a party may not then introduce testimony to controvert it."
*Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989).  Since Liberty Mutual had never asked the trial court to permit it to withdraw its admission that the policy limit was $1 million (and therefore the court had never permitted Liberty Mutual to do so), that admission was binding and conclusive upon Liberty Mutual.  Accordingly, it could not introduce evidence contrary to that admission, including its ineffectual "amendment" to its response to Sims's Request for Admission.

Further, the Rue of Optional Completeness did not make the ineffectual "amendment" admissible.  That rule permits the remainder of a document to be introduced "which ought in fairness to be considered contemporaneously with" a part of the same document that has been admitted.  TEX. R. EVID. 106.  Liberty Mutual's improper "amendment" to its original response to Request for Admission No. 6 was not part of Liberty Mutual's original response, which had been admitted.  It could only be a proper part of what had been admitted if the trial court had granted Liberty Mutual leave to withdraw or amend its original response.  TEX. R. CIV. P. 198.3.  Further, the so-called "amendment" was not something that "ought in fairness to [have been] considered contemporaneously with" the original response, since it was a wholly improper and ineffective attempt to withdraw an admission without the court's permission.  Indeed, it would have

55

been completely ***unfair*** to permit Liberty Mutual to introduce an improper "amendment" to a request for admission (and thereby controvert the binding admission it had made) when Liberty Mutual had neither sought nor obtained the trial court's permission to amend its response. Finally, the rationale of the Rule of Optional Completeness is to introduce into evidence the remainder of a document to correct any misleading impressions left with the jury by the previously introduced part of the document. *Lomax v. State*, 16 S.W.3d 448, 450 (Tex. App.—Waco 2000, no pet.). There was absolutely nothing misleading about reading the jury Liberty Mutual's original (and only proper) response to the Request for Admission. So, the trial court did not abuse its discretion in refusing to permit Liberty Mutual to read its improper and unauthorized "amendment" to the jury.

### 2. The court properly excluded Liberty Mutual's supplemental discovery responses.

Liberty Mutual also complains that the trial court erred in excluding "Liberty's offer of proof of Liberty's amended discovery responses, including interrogatory answers, requests for production, and requests for admission." *Liberty Mutual's Brief, p. 30 (citing to 4 RR 134-137)*. This offer of proof included four items: (i) Defendant's Exhibit 12; (ii) Liberty Mutual's

supplemental response to Interrogatory No. 10; (iii) Liberty Mutual's supplemental response to Request for Production No. 9; and (iv) Liberty Mutual's "amended" response to Request for Admission No. 6.

We have explained above why the trial court properly excluded Defendant's Exhibit 12 and Liberty Mutual's unauthorized "amendment" to Request for Admission 6. And the court likewise properly excluded Liberty Mutual's supplemental responses to Interrogatory No. 10 and Request for Production No. 9.

In its offer of Liberty Mutual's supplemental response to Interrogatory No. 10, Liberty Mutual stated:

> One of the supplemental responses is to Interrogatory No. 10 that reads "Please state the amount of policy limits of uninsured and underinsured motorist coverage of each and every policy that covers or may cover the claim that [is] made the basis of this suit." The response reads: "The amount of the policy limits of the underinsured and uninsured motorist coverage of each and every policy that covers or may cover the claim made the basis of this suit is $300,000. Defendant retains UM/UIM coverage limits of $250,000. Defendant refers Plaintiff to [the] policy attached hereto as Defendant's Bates labeled 2 — 00239-00252. . . . Any previous information given to this interrogatory is no longer applicable." [4 RR 134]

The trial court properly excluded Liberty Mutual's supplemental response to Interrogatory No. 10 because:

57

1.        A party cannot introduce its own answers to interrogatories into evidence. TEX. R. CIV. P. 193.7 ("Answers to interrogatories may be used only against the responding party."); *Morgan v. Anthony* 27 S.W.3d 928, 929 (Tex. 2000).

2.        When offered by Liberty Mutual, Liberty Mutual's interrogatory answer was hearsay. TEX. R. EVID. 801(d), 802.

3.        Liberty Mutual's supplemental response contradicted its admission that the policy limit was $1 million [6 CR 950], which had never been withdrawn or amended with the court's permission. Accordingly, the supplemental interrogatory response was inadmissible. TEX. R. CIV. P. 198.3; *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989).

Accordingly, the trial court properly excluded Liberty Mutual's supplemental response to Interrogatory No. 10.

In its offer of Liberty Mutual's supplemental response to Request for Production No. 9, Liberty Mutual stated:

> Request for Production No. 9 asks for a copy of any additional uninsured or underinsured policy that may cover the claim in question. Our response was: "Defendant is unaware of any additional uninsured or underinsured policy that might provide coverage for the claims in question. Defendant refers Plaintiff to Defendant's Bates label 00002 through 00237, the Liberty Mutual commercial auto policy previously provided to Plaintiff. Defendant further refers Plaintiff to the policy attached hereto as Defendants Bate's label 00238-00252 regarding the amendments to the policy regarding the UM/UIM policy limits. . . ." [4 RR 134-135]

The trial court properly excluded Liberty Mutual's supplemental response to Request for Production No. 9. Because there is no rule specifically providing

that responses to requests for production are or are not admissible, their admissibility is determined by the Rules of Evidence. *Wal-Mart Stores, Inc. v. Cordova*, 856 S.W.2d 768, 772 (Tex. App.—El Paso 1993, writ denied). When offered by Liberty Mutual, Liberty Mutual's supplemental response to Request for Production No. 9 was inadmissible hearsay. TEX. R. EVID. 801(d), 802. Further, by contending that the unauthenticated, unproven "endorsement" that purportedly reduced the policy limit was a part of the Policy, Liberty Mutual's supplemental response contradicted its admission that the policy limit was $1 million [6 CR 950], which had never been withdrawn or amended with the court's permission. Accordingly, the supplemental response to Request for Production No. 9 was inadmissible. TEX. R. CIV. P. 198.3; *Marshall v. Vise*, 767 S.W.2d 699, 700 (Tex. 1989).

## V. THE ADMISSION OF EVIDENCE OF INSURANCE IN THIS CASE DID NOT VIOLATE TEXAS RULE OF EVIDENCE 411 OR HARM LIBERTY MUTUAL.

In its fourth issue, Liberty Mutual claims that Chesapeake's insurance policy was inadmissible pursuant to Texas Rule of Evidence 411. This contention is meritless for several reasons.

59

First, Liberty Mutual did not object to the admission of the Policy on this basis when it was offered. [3 RR 56] Accordingly, Liberty Mutual waived this objection at trial. TEX. R. EVID. 103(a)(1); TEX. R. APP. P. 33.1(a)(1)(A).

Further, the objection is meritless, even if it had been preserved. Texas Rule of Evidence 411 states, "Evidence that a person was or was not insured *against liability* is not admissible upon the issue *whether the person acted negligently* or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another issue, such as proof of agency, ownership, or control, if disputed, or bias or prejudice of a witness." TEX. R. EVID. 411. Liberty Mutual was *Chesapeake's* (and by extension Sims's) insurer, not the underinsured driver's (Aryka Knous's). While the jury was asked to consider whether Knous was negligent, there was no issue as to whether Chesapeake was negligent or acted wrongfully. So, the evidence that Chesapeake was insured against liability was not offered to prove that Chesapeake acted wrongfully. Instead, it was offered for another purpose: to establish an element of Sims's contractual claim against Liberty Mutual. *In re Reynolds*, 369 S.W.3d 638, 653 (Tex. App.—Tyler 2012, orig. proceeding); *Mid-Century Ins. Co. Of Texas v. McLain*, No. 11-08-00097-CV, 2010 WL 851407, at *1-*2 (Tex.

App.—Eastland March 11, 2010, no pet.) (mem. op.). So, the admission of the Policy didn't violate Rule 411.

Liberty Mutual ignores the fact that the Policy did not insure Knous against liability — an essential element for Rule 411 to apply — and falls back to its general argument that the probative value of the evidence of the policy limit was substantially outweighed by the danger of unfair prejudice. That is an analysis under Rule 403 (which we have addressed above), not Rule 411. So Liberty Mutual's fourth issue is really just a rehash of part of its third issue, which has been addressed above.

Further, even if the admission of the Policy violated Rule 411 by showing that Chesapeake was insured against liability, that did not harm Liberty Mutual in this case. The jury was well aware that this case involved a claim by Sims against Liberty Mutual under an automobile liability policy that provided Sims with UIM coverage. Liberty Mutual was the named defendant and openly admitted that the case involved insurance. [2 RR 49-50] So, Liberty Mutual was not harmed by the fact that the jury was advised that Chesapeake was insured against liability. Liberty Mutual's fourth issue must be overruled.

## CONCLUSION AND PRAYER

The fundamental premise of Liberty Mutual's appeal — that the UIM policy limit in the Policy was $250,000 — is false. The evidence at trial conclusively established that the policy limit was $1 million. Liberty Mutual failed to offer any admissible evidence to support its contention that the Policy was modified to reduce the Policy limit to $250,000, and the trial court committed no error in admitting or excluding evidence or permitting the jury to determine the policy limit. Sims therefore prays that the Court affirm the trial court's judgment. Sims further prays for any other relief to which he may be entitled.

Respectfully submitted,

Don Wheeler
State Bar No: 21256200
**LAW OFFICE OF DON WHEELER**
101 Tenaha Street
Center, Texas 75935
Telephone No.: (936) 598-2925
Facsimile No.: (936) 598-7024
**velawson@sbcglobal.net**

**LAW OFFICE OF DARRIN WALKER**
6134 Riverchase Glen Dr.
Kingwood, Texas 77345
(281) 358-2295 (telephone)
(281) 358-5602 (facsimile)
**darrinwalker@embarqmail.com**

By: /s/ Darrin Walker
Darrin Walker
State Bar No.: 00788600

*Counsel for Appellee Rickie Sims*

## CERTIFICATE OF COMPLIANCE WITH TEXAS RULE OF APPELLATE PROCEDURE 9.4

I certify that this brief complies with the limitation of TEX. R. APP. P. 9.4(i)(2)(B) because this brief contains 14,341 words, excluding the parts exempted by TEX. R. APP. P. 9.4(i)(1).

/s/ Darrin Walker

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing motion has been provided to counsel listed below in the manner indicated on this 27th day of December, 2014.

c.c.    David Plautt                      via electronic service and
        Attorney for Appellant            via e-mail to **dplaut@hannaplaut.com**

/s/ Darrin Walker
Darrin Walker